Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5866 | **DATE** | August 5, 2003 |
| **CASE TITLE** | William E. P. McMiller   v   Board of Trustees of the University of Ill. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Memorandum opinion and order entered. Accordingly, Defendant's motion for summary judgment pursuant to FRCP 56 is granted as to all claims.
Status hearing date of 8/27/03 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | 8/7/03 date docketed | 57 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 03 AUG -6 PM 1:09 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM E. P. MCMILLER,       )
                              )
         Plaintiff,           )
                              )   No.   01 C 5866
v.                            )
                              )   Judge Robert W. Gettleman
BOARD OF TRUSTEES OF THE      )
UNIVERSITY OF ILLINOIS,       )
                              )
         Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff William McMiller alleges that the Board of Trustees of the University of Illinois ("the Board" or "defendant") discriminated and retaliated against him in violation of the Americans with Disabilities Act of 1990, ("ADA"), 42 U.S.C. §§ 12101 et seq., and Title VII, 42 U.S.C. §§ 2000 et seq. In particular, plaintiff alleges that the Board's refusal to grant him an extension of his tenure probationary period, as well as plaintiff's subsequent denial of tenure and termination, constituted a refusal to provide a reasonable accommodation for his disability as required by the ADA. Plaintiff further alleges that the refusal to grant the extension was motivated by racial animus in violation of Title VII. Plaintiff also alleges that the Board's refusal to acknowledge his grievances concerning the extension and other matters constituted retaliation in violation of the ADA and Title VII. Plaintiff seeks injunctive relief as to the ADA claims.[1] Plaintiff also seeks injunctive relief, damages, costs and reasonable attorneys' fees on the Title

---

[1] On March 6, 2003, the court dismissed the instant suit for want of prosecution, but subsequently granted plaintiff's motion for relief from judgment and reinstated defendant's motion for summary judgment under Fed. R. Civ. P. 56.

1

VII claims. Defendant has moved for summary judgment on all of plaintiff's claims. For the reasons stated below, that motion is granted.

## FACTS[2]

Plaintiff is an African-American physician licensed in the State of Illinois since 1996. Plaintiff suffers from a medical condition known as ankylosing spondylitis, a degenerative disease of the spine, and spinal stenosis, a complication of the degenerative disease. Because of his medical condition, plaintiff has difficulty standing and walking.

On January 15, 1992, plaintiff was appointed as an assistant research professor in the Department of Psychiatry at the University of Illinois at Chicago ("UIC"). From June 1992 through June 1994, plaintiff conducted mental health research off campus at the University of California, Los Angeles ("UCLA"). In the fall of 1995, plaintiff spoke with Dr. Boris Astrachan ("Astrachan"), then head of UIC's Department of Psychiatry, requesting that his time at UCLA not be counted as part of his probationary period prior to a tenure evaluation. Astrachan suggested that plaintiff request a "tenure rollback" for this two-year period. Plaintiff wrote to Astrachan requesting what plaintiff referred to as a "tenure rollback."

A tenure rollback is defined in part in UIC's document, "Policy on Interruptions of the Probationary Period (Tenure Rollbacks)," ("the Policy"), as "an interruption of the probationary period . . . for one year . . ." The Policy states that "[n]o more than two such rollbacks will be granted." The Policy further states that as a condition for receiving a rollback, "the candidate [must be] making appropriate, demonstrable progress toward attaining indefinite tenure."

---

[2]Unless otherwise noted, the following facts, taken from the parties' L. R. 56.1 Statements and attached exhibits, are not in dispute.

Astrachan wrote to Gerald Moss, Dean of the College of Medicine ("Moss"), recommending approval of the two-year rollback request. On October 6, 1995, Moss in turn wrote to David Broski, Interim Chancellor ("Broski"), recommending approval of the request. Broski ultimately approved the request.

In May 1997, Astrachan and Markus Krusi, another member of UIC's psychiatry faculty ("Krusi"), met with plaintiff to conduct his three-year performance review. Astrachan and Krusi told plaintiff that he had not shown sufficient progress in scholarly research, and that it was unlikely he would achieve tenure on the research track. They urged him to consider transferring to the clinical tenure track, a position that required fewer research publications to meet UIC's tenure criteria. Plaintiff rejected the suggestion at that time.

In 1997, plaintiff met with the head of the Department of Psychiatry, Joseph Flaherty ("Flaherty"), and the dean of UIC's school of public health administration, Susan Scrimshaw ("Scrimshaw"), to discuss in part plaintiff's need to publish quality articles in professional journals to progress toward tenure. It is undisputed that during this conversation, Flaherty said that being African-American without meeting publication expectations would not suffice for achieving tenure. Plaintiff alleges that Flaherty prefaced this remark by saying that plaintiff was at the University only because he is African-American. Defendant denies the allegation. Defendant alleges that Flaherty made the remark in response to plaintiff's statement that being African-American without meeting publication expectations ought to suffice for achieving tenure. Plaintiff denies this allegation.

Shortly after March 31, 1998, plaintiff changed his mind and advised Flaherty that he wished to transfer from assistant research professor to assistant clinical professor. Flaherty and

Charles L. Rice, Vice Dean of the College of Medicine ("Rice"), approved the request. Though tenure standards for assistant clinical professors require at least ten publications, several in refereed journals and many with the tenure applicant as senior author, plaintiff had published only two refereed journal articles, one as a senior author and one as a junior author, and one unrefereed article.[3]

On June 25, 1999, plaintiff wrote to Flaherty requesting another tenure rollback, citing personal problems and medical concerns, including his spinal disease.[4] In a response letter dated August 3, 1999, Flaherty made clear that to receive tenure, plaintiff would need to have published ten articles, several in refereed journals and many as senior author. Flaherty noted that plaintiff had already received a two-year rollback, the maximum under the Policy, but that if plaintiff's health problems "substantially impair[] a major life activity but could be accommodated by a tenure rollback" plaintiff must furnish supporting documentation of his "disability status." In response, plaintiff submitted a letter from Dr. Mark Kushner, which read, "The medical information in the attached letter to Dr. Flaherty dated June 25, 1999, accurately represents the clinical findings and treatment plan he and I have discussed. I am not at liberty to divulge confidential information. However, I can say that physical and cognitive treatments for the impairing problems listed are or have been addressed with my knowledge."

---

[3]Refereed journals send article submissions to outside experts or "referees," typically with the identity of the author concealed. The referee then decides if the article is of sufficient quality to be published.

[4]The letter indicates that copies were sent to Dean Moss, and to plaintiff's attorneys, Scott Neville, Eugene Pincham and J. Owens.

UIC denied the request for the rollback in a fax from UIC attorney Thomas Riley to plaintiff's attorney Scott Neville. After plaintiff appealed the rollback decision, Vice Dean Rice wrote to plaintiff on October 4, 1999, denying the rollback request again. Rice stated that plaintiff had already received the maximum number of rollbacks under UIC policy, and that the extenuating circumstances plaintiff had described occurred at a point that would have had no effect on plaintiff's progress toward promotion. After plaintiff was denied a rollback, plaintiff in no way contributed to the assembling of the tenure review dossier on which the subsequent tenure denial was based.

On October 18, 1999, the Department of Psychiatry's Promotion and Tenure Committee voted unanimously against plaintiff's promotion and tenure. Flaherty was not a member of this committee. On November 5, 1999, the College of Medicine's Committee on Faculty Appointments, Promotions and Tenure voted unanimously against plaintiff's promotion and tenure. Flaherty was not a member of this committee either. Accepting these recommendations, Moss denied plaintiff's application for promotion and tenure.

In November 1999, while plaintiff pursued various internal grievance procedures, several minority students wrote letters to Moss, Flaherty and Provost Elizabeth Hoffman ("Hoffman") urging that plaintiff receive the rollback. In response, defendant alleges that Flaherty said "no more letters from minority students." Defendant denies the allegation. Defendant alleges that Flaherty merely suggested to plaintiff that such letters were unhelpful to his tenure case. Plaintiff also alleges that Flaherty remarked sometime in 1999 that "[once] the tenure process [is] started, there's nothing [plaintiff] or [his] black lawyers can do about it." Defendant denies this allegation. Despite plaintiff's subsequent grievances and their review by Hoffman, Professor

5

Warren Palmer ("Palmer"), Interim Chancellor Sylvia Manning ("Manning"), and Provost Charlotte Tate ("Tate"), the decision to deny tenure was upheld.

On August 3, 2000, the Board issued plaintiff a terminal, one year contract. When the contract expired on August 31, 2001, plaintiff's employment in the Department of Psychiatry ended. On July 20, 2000, plaintiff filed a charge with the EEOC alleging race and disability discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., and subsequently received notice of his right to sue based on that charge.

Plaintiff claims that the refusal to grant the tenure rollback was a refusal to make a reasonable accommodation of a disability as required by the ADA. Plaintiff further claims that the 1997 conversation in which Flaherty allegedly told plaintiff he would not be at UIC but for the fact that he is African-American, the statement "no more letters from minority students," and the statement, "[once] the tenure process [is] started, there's nothing [plaintiff] or [his] black lawyers can do about it," constitute direct evidence of racial animus that caused the refusal to extend the probationary period and led to the denial of tenure and termination, in violation of Title VII.

Alternately, plaintiff claims that under the indirect proof method articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), plaintiff satisfies the conditions for a prima facie case of employment discrimination in violation of Title VII. Plaintiff claims that defendant's legitimate, nondiscriminatory reasons for denying him an extension and tenure (that he had already received the maximum number of rollbacks, had not made sufficient progress toward meeting UIC's publication criteria, and had failed to adequately document his need for a

6

disability accommodation) are pretextual in light of the conversations that touched on plaintiff's race and the fact that his previous extension of his probationary period is mischaracterized as a rollback. Finally, plaintiff claims that defendant's refusal to respond to his grievances, which included allegations of race and disability discrimination, constituted retaliation in violation of the ADA and Title VII.

Defendant asserts that the ADA claim is barred by the Eleventh Amendment, which prohibits private lawsuits against sovereign states. Defendant denies that the two conversations in question evinced racial animus, and asserts that some of plaintiff's evidence of the conversations is inadmissible. Defendant further asserts that plaintiff has not established a prima facie case of race discrimination in any event, because plaintiff was not qualified for the positions given his lack of scholarly achievement, has failed to demonstrate that others similarly situated outside the protected class were treated differently, and has failed to show that defendant's legitimate, nondiscriminatory reasons for denying the extension and denying tenure (failure to document disability, lack of publications, rollback limits) are pretextual.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Admissible evidence must be evaluated in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## The ADA Claim

Defendant argues that the ADA claim is barred because private suits against sovereign states to enforce Title I of the ADA are prohibited by the Eleventh Amendment, and that this sovereign immunity has not been abrogated by Congress pursuant to its Fourteenth Amendment powers. Board of Trustees of Univ. of Ala. at Birmingham v. Garrett, 531 U.S. 356 (2001). Further, the Seventh Circuit has specifically held that private litigation against states to enforce the ADA may not proceed in federal court. Erickson v. Board of Governors of State Colleges and Universities for Northeastern Ill. Univ., 207 F.3d 945, 952 (7th Cir. 2000), cert. denied, 531 U.S. 1190 (2001).

In response, plaintiff asserts that Garrett stands only for the proposition that money damages are not available in suit against states, and notes that the Garrett Court stated in dicta that private individuals could still seek injunctive relief. 531 U.S. at 374 n. 9. A private suit against a state for injunctive relief, however, must be filed against state officials pursuant to Ex parte Young, 209 U.S. 123 (1908). Garrett, 531 U.S. at 374 n. 9. Because plaintiff has alleged no claim against any individual in the instant case, the court grants defendant's motion for summary judgment as to the ADA claim and the associated retaliation claim under the ADA.

## The Title VII Discrimination Claim

Defendant asserts that the 1997 conversation between plaintiff, Flaherty and Scrimshaw is not direct evidence of discrimination because, (1) it constituted stray remarks unrelated to the decisional process, and (2) it was not contemporaneous with plaintiff's request for a rollback, his tenure evaluation, or his tenure denial. Defendant further asserts that there is no evidence that Flaherty's comments influenced the tenure review process or that Flaherty provided false

8

information to the tenure review committee. Plaintiff responds that: (1) Flaherty's alleged statement to plaintiff that he would not be a member of UIC's staff but for the fact that he was African-American demonstrates racial animus; (2) within months of the statement, Flaherty became plaintiff's primary employment decision maker; and (3) because defendant denies the statement, a genuine issue of material fact exists.

Whether Flaherty's alleged statements in 1997 and 1999 are direct evidence of racial animus is hotly contested. It is uncontested, however, that Flaherty's comments, made two years before plaintiff's rollback request, were not contemporary with the rollback decision. The Seventh Circuit held in <u>Gorence v. Eagle Food Centers, Inc.</u>, 242 F.3d 759, 762 (7th Cir. 2001), that stray remarks can be direct evidence of discrimination only when those who provide input into the employment decision express them around the time of the adverse employment decision. See <u>Geier v. Medtronic, Inc.</u>, 99 F.3d 238, 242 (7th Cir. 1996) (to be probative of discrimination, isolated remarks must be contemporaneous with the discharge or be causally related to the discharge decision making process). In the instant case, Flaherty's alleged remark that plaintiff was at UIC only because he was African-American occurred two years before plaintiff's request for a second rollback.

Flaherty's alleged remark about minority students' letters occurred much closer to the time the initial rollback and tenure decisions were made. Nonetheless, the rollback decision was neither made by Flaherty nor made on the basis of input from Flaherty. Instead, it was made by Vice Dean Rice on advice from UIC's legal counsel Thomas Riley. The only involvement by Flaherty with plaintiff's rollback request is a letter dated August 3, 1999, implying UIC's willingness to grant the rollback request despite its two-rollbacks-only policy, if granting the

9

rollback were necessary for UIC to be in compliance with the ADA. Apparently UIC concluded that it was not necessary. There is no evidence in the record that Riley or Rice were influenced by Flaherty or his alleged racial animus at all. Cowan v. Glenbrook Sec. Services, Inc., 123 F.3d 438, 444 (7th Cir. 1997) (stray remarks unrelated to decisional process insufficient to demonstrate employer relied on illegitimate criteria).

Nor was Flaherty a party to the tenure decision or the reviews of plaintiff's grievances. He was not a member of the departmental Promotion and Tenure Committee or the College of Medicine's Committee on Faculty Appointments, Promotions and Tenure, which ultimately made the recommendation to deny plaintiff tenure. He is not a member of the Board, which accepted the recommendation and offered the terminal contract. Plaintiff's grievances were evaluated, not by Flaherty, but by Hoffman, Palmer, Manning and Tate. Since Flaherty was not a decision maker in the rollback, tenure denial or grievance decisions, his alleged racial animus could not have caused defendant to rely on illegitimate criteria in deciding to deny plaintiff a rollback.

To state a prima facie case of discrimination on the indirect evidence approach, the plaintiff must proffer evidence that: (1) he is a member of a protected class; (2) he was doing his job well enough to meet defendant's expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees were treated more favorably. McDonnell Douglas Corp. v. Green, 411 U.S. at 791. Plaintiff is an African-American, and his failure to obtain the rollback, tenure and promotion, and his ultimate termination were all adverse employment actions. The issue, then, is whether he was doing his job well enough to meet defendant's expectations, and if others were treated more favorably. Although plaintiff did not defeat his employer's expectations

to the extent he was terminated for cause before his pre-tenure term contract expired, it was not unreasonable for this academic employer to wait until a tenure review to express its displeasure with its employee's performance. And displeasure there was: plaintiff was repeatedly warned of the deficiencies in his publication record, and how far short he was falling of the publication expectations for tenure. Indeed, one of defendant's central expectations for plaintiff while on the tenure track was that he make regular progress toward tenure. In fact, he made almost none. In Flaherty's letter of August 3, 1999, defendant clearly expressed its expectations: ten publications, several in refereed journals, many as senior author. Plaintiff had three publications, two refereed, one as senior author.

Nor has plaintiff presented any admissible evidence that others similarly situated were treated more favorably. Plaintiff has indicated that a non-African-American, Dr. Debra Klamen ("Klamen"), did most of her publication before receiving tenure in the final two years of her probationary period. Plaintiff has also alleged that a non-African-American, Dr. Deborah Gorman-Smith ("Gorman-Smith"), was granted tenure without the requisite number of publications. Plaintiff has introduced no evidence other than statements offered in his own affidavit "on information and belief." Absent any foundation, such statements cannot create a genuine issue of material fact sufficient to prevent summary judgment for defendant. Toro Co. v. Krouse, Kern & Co., Inc., 827 F.2d 155, 162 (7th Cir. 1987) (statements based merely on information and belief do not satisfy the standards of Fed. R. Civ. P. 56(e)). Unsupported statements that others received more favorable treatment are inadequate to establish a prima facie case of discrimination. Cf. Conley v. Village of Bedford Park, 215 F.3d 703, 711-12 (7th Cir. 2000). In the absence of any evidence in the record to support plaintiff's allegations concerning

11

Gorman-Smith or Klamen, plaintiff has failed to show that he was treated differently. Accordingly, plaintiff has failed to state a prima facie case for Title VII discrimination.

Although the failure to produce direct evidence of discrimination or to satisfy the elements of the prima facie case under <u>McDonnell Douglas</u> is dispositive of plaintiff's Title VII discrimination claim, the court notes that defendant has also articulated a legitimate, nondiscriminatory reason for its denial of the tenure rollback. The Policy states that "[n]o more than two such rollbacks will be granted" and that as a condition for receiving a rollback, "the candidate [must be] making appropriate, demonstrable progress toward attaining indefinite tenure." Plaintiff alleges that defendant's reason for the denial of his 1999 request for a rollback was pretextual because his earlier, two year extension of his probationary period was mischaracterized as a tenure rollback.

The court notes that plaintiff himself characterized the request as a request for a rollback. More importantly, regardless of how the 1999 request is characterized, granting a rollback was at the discretion of defendant, subject to "appropriate, demonstrable progress" in research and publication. As noted above, plaintiff did not make such progress. Even if plaintiff might have made more progress had the rollback been granted, that determination was defendant's to make. The court does not tell employers what the requirements for a job must be. <u>Gorance</u>, 242 F.3d at 765. Plaintiff has introduced no evidence to suggest that defendant's determination was made on any other basis than plaintiff's sparse publication record at the time the determination was made. Plaintiff has not offered evidence sufficient to create a genuine issue of material fact as to whether defendant's articulated reason was pretextual. Accordingly, defendant's motion for summary judgment as to the Title VII discrimination claim is granted.

## The Title VII Retaliation Claim

To state a claim for retaliation, plaintiff may use either a direct evidence or indirect evidence approach. Stone v. City of Indianapolis, 281 F.3d 640, 643 (7th Cir. 2002). Because plaintiff has not offered direct evidence of retaliation, to prove his claim he must demonstrate that: (1) he engaged in statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite meeting his employer's legitimate expectations, he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002); Stone, 281 F.3d at 644.

In the instant case, plaintiff alleges that the grievance procedures he initiated in November 1999 constituted statutorily protected activities, and that defendant's refusal to grant plaintiff a tenure rollback, promotion and tenure, and defendant's ultimate termination of plaintiff constituted materially adverse employment actions. As noted above, in 1999 plaintiff was not performing his job according to defendant's legitimate expectations. Further, plaintiff has offered no evidence that others similarly situated who did not engage in protected activities suffered no retaliation. Again, plaintiff has indicated that Klamen did most of her publication before receiving tenure in the final two years of her probationary period and that Gorman-Smith was granted tenure without the requisite number of publications. In the absence of any evidence in the record to indicate whether Gorman-Smith or Klamen engaged in protected activity, plaintiff has failed to show that he was treated differently than them. Accordingly, plaintiff has failed to state a prima facie case for Title VII retaliation. Defendant's motion for summary judgment as to the Title VII retaliation claim is granted.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 is granted as to all claims.

ENTER:   August 5, 2003

_____
Robert W. Gettleman
United States District Judge